UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER JOHN STREETER,

v.                                      Case No. 8:20-cr-304-VMC-CPT
                                                 8:25-cv-558-VMC-CPT

UNITED STATES OF AMERICA.

_____/

**ORDER**

This cause is before the Court on Christopher John Streeter's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 111). The United States of America filed a response. (Civ. Doc. # 11). Mr. Streeter filed a reply. (Civ. Doc. # 14). Later, with the Court's leave, Mr. Streeter filed a supplement to his Motion. (Civ. Doc. # 19). The United States responded to the supplement (Civ. Doc. # 20), and Mr. Streeter replied. (Civ. Doc. # 24). The Motion, including the supplement, is dismissed in part and denied in part.

**I.   Background**

**A.   Filing of Criminal Case**

In October 2020, Mr. Streeter pled guilty, pursuant to a written plea agreement, to one count of sex trafficking of children in violation of 18 U.S.C. § 1591, as alleged in the

1

information. (Crim. Doc. ## 1, 6, 7). Before the information was filed, Mr. Streeter was represented by Walter Reynoso for purposes of the investigation. (Crim. Doc. # 27; Crim. Doc. # 101 at 3-5). However, Mr. Reynoso's admission to practice in the Middle District of Florida had lapsed, such that he could not sign the plea agreement or attend any court hearings. (Crim. Doc. # 27). Thus, Mr. Streeter subsequently hired Mark Rankin to be his counsel for the guilty plea and sentencing phases. Only Mr. Rankin made an official appearance in the criminal case after the information was filed. See (Crim. Doc. # 3) (Mr. Streeter's waiver of indictment signed by Mr. Rankin and filed on the same day as the information); (Crim. Doc. # 6) (amended plea agreement signed by Mr. Streeter and Mr. Rankin).

The amended plea agreement contains the factual basis for the plea, to which Mr. Streeter explicitly agreed. (Crim. Doc. # 6 at 18-23). Mr. Streeter's plea agreement also contains a partial appeal waiver. (Id. at 16). Furthermore, the plea agreement contained a statement of voluntariness. (Id. at 17-18).

B.    **Change of Plea Hearing**

During the change of plea hearing, Magistrate Judge Christopher P. Tuite went over the plea agreement and other

2

matters in detail with Mr. Streeter, who was under oath. (Crim. Doc. # 77). Judge Tuite first checked that Mr. Streeter had sufficient education to read the documents in his case and that he was not under the influence of any intoxicating substances. (Id. at 28). He next confirmed that Mr. Streeter had reviewed the charge, evidence, and his option to go to trial with Mr. Rankin. (Id. at 29-32). Judge Tuite asked Mr. Streeter if he was "fully satisfied with the advice and representation [Mr. Streeter] received from [his] lawyer," to which Mr. Streeter responded "[y]es, Your Honor." (Id. at 32). Judge Tuite also confirmed that Mr. Streeter had read each page of the plea agreement and had reviewed "the plea agreement in its entirety with [his] lawyer" before Mr. Streeter signed it. (Id. at 32-33). Judge Tuite next read the most significant terms of the plea agreement with the government and ensured that Mr. Streeter understood those terms. (Id. at 33-44).

Judge Tuite also asked whether Mr. Streeter had been "threatened, coerced, or otherwise forced . . . in any way" to plead guilty, to which Mr. Streeter responded "[n]o, your honor." (Id. at 41). Judge Tuite asked him if he was "pleading guilty freely and voluntarily?" (Id.). Mr. Streeter responded "[y]es, Your Honor." (Id.). Mr. Streeter also agreed that he

3

decided to plead guilty "only after having had a full and ample opportunity to discuss the matter with [his] lawyer, Mr. Rankin." (Id. at 41-42). Mr. Streeter agreed that he understood the minimum and maximum sentences for his offense and had "reviewed the sentencing guidelines with Mr. Rankin." (Id. 42, 45-46). Judge Tuite also confirmed that Mr. Streeter understood that his plea agreement included an appellate waiver. (Id. at 46-47). Judge Tuite reiterated that Mr. Streeter had "the right to persist in [a] plea of not guilty" and "the right to a jury trial at which the Government would be required to prove the charges against [him] beyond a reasonable doubt and to the unanimous satisfaction of a jury." (Id. at 47).

Judge Tuite reviewed the elements of the offense with Mr. Streeter, including that Victim 1, "the person recruited, enticed, harbored, transported, provided, obtained, patronized, or solicited, had not attained the age of 14 years at the time of the offense charged in Count One." (Id. at 48-50). Judge Tuite then reviewed the factual basis for the plea. (Id. at 51-53).

The factual basis in the plea agreement reads:

> From an unknown date but as early as September 2018, through June 2019, the defendant, Christopher John Streeter, directly participated in a scheme to

sexually exploit children in the Philippines for the purpose of producing child sex abuse images and videos for his consumption and sexual gratification.

Streeter used several facilities of interstate and foreign commerce, including the internet and the website Facebook, to communicate from his residence in the Middle District of Florida with several identified and unidentified minors and adults in the Philippines. Streeter, using at least two Facebook accounts - user names "Jack Reacher" and "John Chris" - knowingly communicated with the individuals for the purpose of recruiting, soliciting, enticing, transporting, providing, soliciting, and patronizing children under 18-years old to take pornographic photographs or have sex on video in exchange for payment.

On multiple occasions over that period, Streeter communicated and transacted with a recruiter (some of whom identified as minors themselves) for the purpose of recruiting children to engage in sex acts on camera. The children — some of whom were as young as 12 and 13-years old — were particularly vulnerable due to poverty and illness. Some of the child victims were immediate family members or classmates of the recruiters.

Streeter would then, using facilities of interstate and foreign commerce, send payment for their sexual performances. The money that Streeter remitted covered recording-production costs, such as hotel rooms, transportation, payment to the persons engaging in sex acts (including the minor), and a commission for the recruiter. In return, Streeter received videos and images of minors involved in various sex acts that tracked Streeter's directives, including minors engaged in digital stimulation of their genitals, vaginal intercourse, anal intercourse, and insemination. Occasionally, Streeter also conversed directly with minors in the Philippines for the purpose of that minor producing pornography of herself.

Streeter negotiated and paid a premium for videos and images depicting female minors losing their virginity - negotiations that sometimes involved the parent of the minor selling their child's virginity. He also negotiated and paid a premium for media depicting female minors being inseminated and being placed at risk of pregnancy; a sexual fetish that he enjoyed watching. Streeter paid increased fees and bonuses for such videos and offered and sent additional payment for emergency contraception pills, and, occasionally, for abortions.

For example, Streeter communicated on several occasions in 2018 and 2019 with a Facebook user bearing the display name L.A. L.A. acted as a recruiter in the Philippines to source minors for sexual abuse. In January 2019, L.A. informed Streeter that L.A. had a "new girl" for him. Streeter, utilizing his Facebook account with the username "Jack Reacher," responded: "send pic." L.A. responded by sending Streeter a picture of Victim-1 and informing Streeter that Victim-1 was under the age of 18. Victim-1 was born in November 2006; making her 12-years old in January 2019. L.A. sent Streeter additional pictures of Victim-1 and stated that they would use Victim-1 to produce a video for Streeter in March.

In March 2019, L.A. offered to produce a video of Victim-1, referring to her throughout their conversations as "virgin girl." Streeter requested additional pictures of Victim-1. On April 5, 2019, still communicating over the internet and Facebook, Streeter asked L.A.: "So how much to get the video," referring to a sex-abuse video of Victim-1. L.A. responded: "2000 . . . 1000 hotel and 500 load like always 500 for the guy," listing prices in Philippine Pesos. A few minutes later, Streeter used an online money-transfer company named W.R., which operates in interstate commerce, to transfer 2041 Philippine Pesos to a person bearing the initials A.B.T. — a previously designated recipient for L.A. Streeter then messaged the transaction receipt number to L.A. Streeter's name and

6

residential address in the Middle District of Florida were listed in the transaction's sender information.

Several hours later, L.A. sent Streeter two videos through Facebook. The first video, over two minutes long, shows Victim-1 removing her clothes and a penis making contact with her genitals. The second video, 16 seconds long, shows sperm on Victim-1's genitals.

Streeter and L.A. continued to discuss Victim-1 in June 2019. On June 11, 2019, L.A. again offered Victim-1 to Streeter, sending a picture of her and referring to her as the "virgin girl." Streeter commented that they had already produced a "bad" video of Victim-1. L.A. quoted Streeter a price for a new video of Victim-1, adding that Victim-1 was ready and waiting. Two hours later, Streeter used W.R. to send 4,500 Philippine Pesos to recipient A.B.T. The IP address associated with the online transaction resolves to Streeter's former residence in Land O'Lakes, Florida, which is in the Middle District of Florida. Streeter supplied L.A. with a receipt number through Facebook.

Several days later, Streeter and L.A. discussed producing yet another sex abuse video of Victim-1. They discussed two separate prices for sex abuse videos of Victim-1; 4,000 Philippine Pesos for a video with "no pills" (referring to emergency contraception) and 4,700 for a video with "pills." The higher price for a video with "pills" was intended to reflect a premium paid for Victim-1's insemination during the sex abuse video. Around midnight on June 26, 2019, L.A. sent a photograph of Victim-1 and messaged Streeter saying: "Hon sent [sic] now cause big white is here and virgin girl sent [sic] 4700 hon." "Big white" referred to the male being paid to sexually abuse Victim-1 in the video. Two minutes after L.A. requested 4,000 Philippine Pesos for a sex abuse video of Victim-1, Streeter sent 4,016 Philippine Pesos through W.R. to recipient A.B.T. Two days later, L.A. sent Streeter two additional videos over Facebook,

7

requesting 3,800 Philippine Pesos. The next day, Streeter again used W.R. while in the Middle District of Florida to send 3,250 Philippine Pesos to recipient A.B.T. Streeter then messaged L.A. stating that the recording was the third "bad" video of the same girl and further commented: "How hard is it to just fuck that girl," referring to Victim-1. L.A. responded: "The guy think hon is afraid to get her preggy cause she is under age she 13 not 14," later repeating that Victim-1's age is 13-years old. Streeter voiced displeasure that video only showed semen outside of Victim-1's vagina, adding: "You get the pills for her and make her take them." Defending her actions, L.A.[] stated she would not take commission from the video and claimed that she provided Victim-1 with money to buy the emergency contraception at a pharmacy. Streeter directed that next time L.A. buy the emergency contraception pills for Victim-1 and make her take them. Victim-1 was paid for her participation in the sex abuse videos that Streeter had ordered and received.

(Crim. Doc. # 6 at 18-23).

Judge Tuite asked Mr. Streeter specifically if he agreed with the factual basis listed in the plea agreement and if he had reviewed "all of those facts in detail with [his] lawyer before [he] initialed those pages." (Crim. Doc. # 77 at 51). Mr. Streeter stated "Yes, I did, Your Honor." (Id.). When asked if he had "any disagreement with those facts," Mr. Streeter replied "No, I don't, Your Honor." (Id.). The Court accepted Mr. Streeter's guilty plea. (Crim. Doc. # 15).

### C.   Sentencing & First Section 2255 Motion

On January 7, 2021, this Court held a sentencing hearing,

8

and it held a separate hearing on restitution on April 1, 2021. (Crim. Doc. ## 48, 63). On April 1, 2021, the Court entered an amended judgment reflecting Mr. Streeter's sentence: a term of life imprisonment, a lifetime term of supervised release, a special assessment of $5,000, and restitution in the amount of $70,000. (Crim. Doc. # 64). On April 8, 2021, at the parties' request, the Court entered a second amended judgment that amended only the restitution repayment terms. (Crim. Doc. # 69). Mr. Streeter did not file a direct appeal.

In December 2021, Mr. Streeter filed his first Section 2255 Motion, arguing that his counsel was ineffective for failing to pursue a direct appeal, despite Mr. Streeter's request that he do so. (Crim. Doc. # 73). Mr. Streeter wrote that he told Mr. Rankin at his sentencing that "he wanted to file a direct appeal because [Mr. Streeter] felt that he had been denied his constitutional rights [and] was denied all of his discovery in his case." (Id.). Mr. Rankin allegedly refused to file an appeal on Mr. Streeter's behalf. (Id.). The Court granted Mr. Streeter's first 2255 motion as to that one claim so that Mr. Streeter could file an out-of-time appeal of his judgment of conviction. (Crim. Doc. # 82). While Mr. Streeter raised other claims of ineffective assistance of

counsel that pertained to counsel's actions during the representation, the Court dismissed those claims without prejudice. (Id. at 6).

### D.    Direct Appeal & This Section 2255 Motion

Mr. Streeter then timely filed a direct appeal. (Crim. Doc. # 88). On appeal, Mr. Streeter was represented by Thomas Burns. Mr. Burns filed an Anders brief.[1] United States v. Streeter, No. 22-11857, at (Doc. # 29) (11th Cir. Dec. 12, 2022). Although appellate counsel could not argue in good faith that the conviction and sentence should be vacated and thus moved to withdraw, counsel also briefed numerous potential issues in the record that might arguably have supported the appeal. These included whether Mr. Streeter had knowingly and voluntarily pled guilty, whether Mr. Streeter's counsel was ineffective at the plea stage, and whether his sentence was subject to reversible error. Id.

After the Anders brief was filed, Mr. Streeter responded pro se, raising numerous arguments for reversal of his conviction. These included prosecutorial-misconduct claims related to alleged Brady violations, plea negotiations, threats, and conflicts of interest, claims based on factual

---

[1] Anders v. California, 386 U.S. 738 (1967).

challenges, discovery issues, videos, his alleged innocence, claims based on the victim-impact statements and purported inconsistencies in the evidence, as well as discussion about the victims, their credibility, and ages. Id. at (Doc. # 52 at 4-20) (11th Cir. June 27, 2023).

"Because independent examination of the entire record reveal[ed] no arguable issue of merit," the Eleventh Circuit affirmed Mr. Streeter's conviction and sentence. United States v. Streeter, No. 22-11857, 2023 WL 8447360, at *1 (11th Cir. Dec. 6, 2023).

Mr. Streeter then filed the instant Section 2255 Motion, raising fourteen grounds of ineffective assistance of counsel and prosecutorial misconduct. (Civ. Doc. # 1). The grounds are muddled and largely repetitive of one another, as well as each ground often attempting to raise more than one claim for relief. For example, in Ground Ten, Mr. Streeter accuses the prosecutor of various types of misconduct (hiding exculpatory evidence, committing perjury, etc.) and accuses attorney Mr. Rankin of ineffective assistance of counsel based on his cross-examination of the United States' witness at sentencing and a supposed conflict of interest in the form of Mr. Rankin wanting to protect the prosecutor for an unspecified reason. (Id. at 31-32). The United States has responded (Civ. Doc. #

11), and Mr. Streeter has replied. (Civ. Doc. # 14).

Subsequently, with the Court's leave, Mr. Streeter filed a supplement, in which he primarily argues that he is actually innocent of violating 18 U.S.C. § 1591 and reiterates his belief that his counsel was ineffective. (Civ. Doc. # 19). The United States has responded to the supplement (Civ. Doc. # 20), and Mr. Streeter has replied. (Civ. Doc. # 24).[2]

The Motion, including the supplement, is ripe for review.

## II.  **Discussion**

### A.  **Procedural Bar & Default**

First, the Court addresses the issue of procedural bar and procedural default. The United States argues "[a]ll of [Mr.] Streeter's claims not based on ineffective assistance of counsel are procedurally barred" or, alternatively, are

---

[2] The Court does not interpret either of Mr. Streeter's replies (Civ. Doc. ## 14, 24) as asserting additional claims. To the extent they could be construed as asserting additional claims, these claims are waived. See McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021) ("[A]rguments raised for the first time in a party's reply brief are waived."); Wallace v. United States, No. 8:11-cr-287-SCB-MAP, 2014 WL 12605465, at *5 (M.D. Fla. Jan. 13, 2014) ("Petitioner's § 2255 motion did not contend that appellate counsel was ineffective for failing to argue the Fourth Amendment issues, and this ineffectiveness claim was raised for the first time in his reply brief. . . . Arguments raised for the first time in a reply brief are deemed waived.").

procedurally defaulted. (Civ. Doc. # 11 at 10-11). The Court agrees.[3]

"The terms 'procedurally barred' and 'procedurally defaulted' have distinct meanings." Seabrooks v. United States, 32 F.4th 1375, 1383 (11th Cir. 2022). "A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and [the appellate court] rejected on direct appeal." Id. "Once a matter has been decided adversely to a defendant on direct appeal, it cannot, except in the case of an intervening change in the law, be re-litigated in a collateral attack under section 2255, as it is procedurally barred." United States v. Chmieleski, No. 4:17CR24/MW/MAL, 2023 WL 3205344, at *2 (N.D. Fla. Mar. 3, 2023), report and recommendation adopted sub nom. United States v. Chmielewski, No. 4:17CR24-MW/MAL, 2023 WL 3199980 (N.D. Fla. May 2, 2023). In contrast, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that

---

[3] Again, the Motion's grounds are largely repetitive of one another and frequently combine multiple claims in the same ground. Because of this organization, the Court addresses the claims by their substance (e.g., an ineffective assistance of counsel claim regarding the decision to plead guilty) rather than by the ground number assigned to them in the Motion.

claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004).

All of Mr. Streeter's prosecutorial misconduct grounds and any other non-ineffective-assistance-of-counsel grounds that could be construed from the Motion or supplement are procedurally barred because he raised them in his response to counsel's Anders brief in the direct appeal. See United States v. Streeter, No. 22-11857, at (Doc. # 52 at 4-20) (11th Cir. June 27, 2023); see also Chmieleski, 2023 WL 3205344, at *2 ("Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised."). Also, in the Anders brief, appellate counsel flagged potential issues involving the involuntariness of the plea and whether Mr. Streeter's sentence was imposed in error. United States v. Streeter, No. 22-11857, at (Doc. # 29). The Eleventh Circuit considered these arguments in its review of the entire record. By affirming the conviction and sentence, the Eleventh Circuit rejected these arguments. Streeter, 2023 WL 8447360, at *1. And Mr. Streeter has not identified an intervening change in the law, as would be necessary to overcome the procedural bar. See Seabrooks, 32 F.4th at 1383 ("A defendant can overcome a procedural bar when, as here, there is an intervening change in law."). Thus, the Motion is

14

dismissed as procedurally barred as to these grounds.

Alternatively, even if these grounds had not been sufficiently raised before the Eleventh Circuit, they would still be procedurally defaulted because they could have been raised on direct appeal. "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (citations and internal quotation marks omitted).

The Court emphasizes that "[a]ctual innocence is not itself a substantive claim." United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005). Rather, actual innocence is an exception to procedural default that Mr. Streeter cannot establish. He admitted under oath the truth of the factual basis for his plea during his plea colloquy. And Mr. Streeter has not met the heavy burden of showing that his statements during his plea colloquy were false. See Winthrop-Redin v.

United States, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Mr. Streeter's admission of guilt under oath, which is supported by the overwhelming evidence in this case including chat logs and payment records, establishes that he is not actually innocent.

The Court is not persuaded by Mr. Streeter's supplemental argument that he is guilty of production of child pornography under 18 U.S.C. § 2251(a), but not guilty of sex trafficking under 18 U.S.C. § 1591. (Civ. Doc. # 19 at 3, 8-12). The facts in the factual basis to which Mr. Streeter agreed establish a violation of Section 1591. Furthermore, the United States is correct that the fact "that [Mr.] Streeter's conduct also violated another criminal statute does not exonerate him of violating" Section 1591. (Civ. Doc. # 20 at 7-8); see United States v. Cespedes, 151 F.3d 1329, 1332 (11th Cir. 1998) ("[T]he federal courts have long recognized 'that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.'" (citation omitted)). Mr. Streeter has not satisfied the burden of establishing actual innocence.

Nor can Mr. Streeter establish cause and prejudice. True, ineffective assistance of appellate counsel qualifies as cause. However, Mr. Streeter has not established that appellate counsel was ineffective. Even though appellate counsel filed an Anders brief, Mr. Burns did raise numerous potential issues for the Eleventh Circuit to review on appeal in that brief. United States v. Streeter, No. 22-11857, at (Doc. # 29). Given the issues counsel raised in the Anders brief and the appellate waiver that limited the grounds for appeal, the Court cannot agree that Mr. Burns was ineffective.

Furthermore, Mr. Streeter has not established that he was prejudiced by any ineffectiveness of counsel. The Eleventh Circuit reviewed the entire record and found no basis to vacate Mr. Streeter's conviction or sentence. Mr. Streeter has not convinced the Court that any of his current arguments regarding prosecutorial misconduct, alleged Brady claims, credibility of witnesses, or other evidentiary issues — if raised by appellate counsel — would have led to a different result on direct appeal. Rather, the Court agrees with the United States that these arguments all lack merit for the reasons explained by the United States. (Civ. Doc. # 11 at 13-35).

In short, all Mr. Streeter's grounds for relief not based

17

upon the ineffective assistance of counsel are procedurally barred or, alternatively, procedurally defaulted. This includes all claims of prosecutorial misconduct, including the claim that the prosecutor coerced him into pleading guilty. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("The voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." (citation and internal quotation marks omitted)). Mr. Streeter's Motion is thus dismissed as procedurally barred as to all non-ineffective assistance of counsel claims.

**B.   Waiver**

Furthermore, and apart from the procedural bar, all of Mr. Streeter's grounds for relief – except those alleging that his guilty plea was involuntary or ineffective assistance of counsel claims that relate to his decision to plead guilty — are waived by virtue of his guilty plea. (Civ. Doc. # 11 at 12-13).

By pleading guilty, a defendant waives all non-jurisdictional arguments except "an attack on the voluntary and knowing nature of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992). This waiver also applies to

18

claims of ineffective assistance of counsel, except when the claim of ineffective assistance is about the decision to plead guilty. See Armano v. United States, No. 21-14426, 2024 WL 3888185, at *1 (11th Cir. Aug. 21, 2024) ("[H]e does waive an ineffective assistance claim by entering a plea when the 'claim of ineffective assistance is not about his decision to plead guilty.'" (quoting Wilson, 962 F.2d at 997)). Finally, "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" Class v. United States, 583 U.S. 174, 183 (2018) (quoting United States v. Broce, 488 U.S. 563, 573-74 (1989)).

Because Mr. Streeter pled guilty, all his claims, besides claims that he was threatened to plead guilty and all his ineffective assistance of counsel claims about his decision to plead guilty, are waived. These include his claims regarding other alleged prosecutorial misconduct, ineffective assistance of counsel not relating to the decision to plead, and the sufficiency of the evidence. See United States v. Viscome, 144 F.3d 1365, 1370 (11th Cir. 1998) ("Viscome's guilty plea waived all non-jurisdictional defects in the proceedings against him; and Viscome's sufficiency of the evidence challenge is non-jurisdictional."); United States v.

19

Coleman, 653 F. App'x 712, 713 (11th Cir. 2016) ("By entering a knowing and voluntary unconditional guilty plea, Coleman waived his right to challenge the district court's denial of his motion to suppress evidence. . . . [and] also waived his right to raise on appeal his argument about prosecutorial misconduct during the grand jury proceedings." (citations omitted)); Caceres v. United States, No. 13-22901-CIV, 2014 WL 5761112, at *1 (S.D. Fla. Nov. 5, 2014) ("Caceres pled guilty freely and voluntarily, thereby waiving any claims relating to non-jurisdictional defects in his criminal proceeding such as counsel's failure to investigate certain evidence during pretrial discovery."). Thus, all grounds for relief raising such arguments are dismissed as waived.

### C.   **Merits**

Finally, as to Mr. Streeter's grounds for relief that are not procedurally barred or waived, these grounds fail on the merits. Mr. Streeter bears the burden of proving that he is entitled to relief under Section 2255. Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

### 1.   **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance

20

prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Streeter must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (internal citations and quotations omitted). In other words, he must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Streeter must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court has held that "the two-part Strickland [] test applies to challenges to guilty pleas based on ineffective

21

assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). "There is a strong presumption that statements made during the plea colloquy are true. Consequently, a defendant bears a heavy burden to show that his statements under oath were false." Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted). The Court is mindful that a "section 2255 motion is not designed to account for buyer's remorse regarding a defendant's decision to plead guilty." Dawson v. United States, No. 8:16-cr-500-VMC-AEP, 2019 WL 11704149, at *6 (M.D. Fla. Apr. 15, 2019).

As mentioned before, only Mr. Streeter's ineffective assistance of counsel claims regarding his guilty plea have not been waived. These claims fail on the merits. Mr. Streeter made numerous statements under oath at his change of plea hearing that disprove that his counsel was ineffective regarding the decision to plead guilty. During the plea colloquy, Mr. Streeter confirmed that he had reviewed the charge, evidence, and his option to go to trial with Mr. Rankin. (Crim. Doc. # 77 at 29-32). Judge Tuite asked Mr.

22

Streeter if he was "fully satisfied with the advice and representation [Mr. Streeter] received from [his] lawyer," to which Mr. Streeter responded "[y]es, Your Honor." (Id. at 32). Judge Tuite also confirmed that Mr. Streeter had read each page of the plea agreement and had reviewed "the plea agreement in its entirety with [his] lawyer" before Mr. Streeter signed it. (Id. at 32-33). Mr. Streeter agreed that his decision to plead guilty was "a decision that [he had] made only after having had a full and ample opportunity to discuss the matter with [his] lawyer, Mr. Rankin." (Id. at 41-42). Mr. Streeter further agreed that he understood the minimum and maximum sentences for his offense and had "reviewed the sentencing guidelines with Mr. Rankin." (Id. 42, 45-46).

Mr. Streeter has not satisfied the heavy burden of showing that his statements made under oath during his plea colloquy were false. See Winthrop-Redin, 767 F.3d at 1217 ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). Thus, the Court does not credit Mr. Streeter's new allegations that his counsel's alleged ineffectiveness rendered his plea involuntary and unknowing. He has not established that his counsel was

23

ineffective or that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

To the extent Mr. Streeter also argues his counsel failed to provide effective assistance regarding the plea process because counsel was absent or failed to test the prosecution's case, this claim fails. "The right to the effective assistance of counsel is [] the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 656 (1984). "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Id. at 659 n. 25.

Mr. Streeter insists that his first attorney, Mr. Reynoso, was in essence "totally absent" because Mr. Reynoso had allowed his admission to the Middle District of Florida Bar to lapse, so was unable to appear in this Court during this case. (Civ. Doc. # 1 at 5, 8; Civ. Doc. # 19 at 6, 13-15, 18). Mr. Reynoso is admitted to practice law in the State of Florida, but he had allowed his membership in the Middle District of Florida Bar to lapse. (Reynoso Affidavit at 1, 7). Mr. Reynoso was hired after a search warrant was executed

24

at Mr. Streeter's home but before any information or indictment had been filed. (Civ. Doc. # 19 at 14).

Importantly, Mr. Streeter admits he hired Mr. Reynoso to represent him during the pre-information investigation stage of the case and with the understanding that Mr. Reynoso would not make any court appearances. (Id.). This fact dooms his ineffective assistance claim regarding Mr. Reynoso's pre-information representation. The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Texas v. Cobb, 532 U.S. 162, 167–68 (2001) (citation omitted). And "a claim of ineffective assistance of counsel cannot stand if the defendant's Sixth Amendment right to counsel had not yet attached." United States v. Frye, No. 4:01-CR-8-WHB, 2011 WL 13284767, at *5 (S.D. Miss. July 7, 2011); see also United States v. Alvarez, 142 F.3d 1243, 1250 (10th Cir. 1998) ("On the morning of April 15, 1994, when Mr. Alvarez gave his second statement to the DEA agents, the government had not initiated formal proceedings against him. Accordingly, because Mr. Alvarez had no Sixth Amendment right to effective assistance of counsel at the time the DEA agents

25

questioned him, he cannot argue that Mr. Christiansen's performance before or during questioning fell short of the Sixth Amendment's requirements."). Thus, Mr. Streeter's claim of ineffective assistance of counsel concerning Mr. Reynoso's conduct before the filing of the information fails.

Even if an ineffective assistance claim could be based on Mr. Reynoso's pre-information representation or if Mr. Streeter maintains Mr. Reynoso continued to provide ineffective assistance as out-of-court co-counsel after the information was filed, Mr. Reynoso's lack of admission to the Middle District of Florida Bar did not render him absent because Mr. Streeter agreed Mr. Reynoso would not represent him in Court. Mr. Streeter also acknowledges Mr. Reynoso did communicate with the prosecutor, received early discovery, discussed the possibility of a proffer agreement, and attempted to negotiate a resolution of the case for Mr. Streeter during the investigation phase. (Civ. Doc. # 1 at 8; Civ. Doc. # 19 at 14-15). In short, Mr. Reynoso was not "totally absent" and did not fail to assist Mr. Streeter during a critical stage of the proceedings.

Likewise, Mr. Rankin, who was hired to represent Mr. Streeter in Court and through the plea and sentencing process, was not "totally absent" from any phase of the case and did

not fail to subject the United States' case to adversarial testing. To the extent Mr. Rankin represented Mr. Streeter for a time before the information was filed (Civ. Doc. # 19 at 16-17), Mr. Rankin's pre-information conduct cannot support an ineffective assistance of counsel claim. Frye, 2011 WL 13284767, at *5. Regarding post-information representation, Mr. Streeter swore at his change of plea hearing that he had fully reviewed the charge, evidence, and plea agreement with Mr. Rankin, had made the decision to plead guilty with the benefit of Mr. Rankin's advice, and was satisfied with his representation. (Crim. Doc. # 77 at 29-33). For sentencing, Mr. Rankin filed a sentencing memorandum on Mr. Streeter's behalf, arguing for a downward variance to the statutory mandatory minimum sentence of 15 years. (Crim. Doc. # 40). During sentencing, Mr. Rankin reiterated this argument and cross-examined the United States' task force officer witness. (Doc. # 79 at 43-46). While Mr. Streeter is clearly dissatisfied with the assistance Mr. Rankin and Mr. Reynoso provided, he falls far short of establishing a Cronic claim.

Next, to the extent Mr. Streeter's ineffective assistance claim is based on his counsel having an alleged conflict of interest that affected his decision to plead

27

guilty, this claim fails. "[A] defendant must show *first,* that his attorney had an actual conflict of interest, and *second,* that the conflict adversely affected counsel's performance." Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001). "Only when 'a defendant shows that his counsel actively represented conflicting interests' does he establish an actual conflict under the Sixth Amendment." Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). "That fact-specific inquiry requires the defendant to make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his interests." Kennedy v. United States, 799 F. App'x 697, 700 (11th Cir. 2020). As to the second element, "[i]f there is a guilty plea involved, this Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." Pegg, 253 F.3d at 1278.

Mr. Streeter has not established that either of his attorneys during the investigation and district court proceedings, Mr. Reynoso or Mr. Rankin, or his appellate counsel, Mr. Burns, had an actual conflict of interest. Rather, Mr. Streeter's claims of a conflict of interest, involving Mr. Reynoso, Mr. Rankin, and Mr. Burns all desiring

28

to protect the AUSA from facing consequences for prosecutorial misconduct or to protect each other because of alleged friendships or other concerns, see, e.g., (Civ. Doc. # 1 at 23, 30, 32-33, 36, 41-42), are conclusory and insufficient. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate entitlement to habeas relief); see also Kennedy, 799 F. App'x at 700 ("A mere speculative, hypothetical, or possible conflict of interest is insufficient to establish an ineffective-assistance claim."). Thus, Mr. Streeter cannot establish an ineffective assistance of counsel claim based on a conflict of interest.

The Motion is denied as to Mr. Streeter's ineffective assistance of counsel claims concerning his plea.

To the extent this claim is not waived, the Motion is also denied as to Mr. Streeter's claim of ineffective assistance of appellate counsel. Again, Mr. Streeter has not established that Mr. Burns had an actual conflict of interest. Furthermore, as explained in the procedural default section of this Order, Mr. Burns did not provide ineffective assistance by filing the Anders brief, and Mr. Streeter was not prejudiced by any alleged ineffectiveness.

29

### 2. <u>Involuntary Plea</u>

As mentioned before, Mr. Streeter's claim that his guilty plea was involuntary is procedurally barred (or defaulted) and dismissed as such. Nevertheless, in the alternative, the Court addresses the merits of this claim. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." <u>Winthrop-Redin</u>, 767 F.3d at 1216 (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 493 (1962)). "A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." <u>United States v. Speight</u>, 454 F. App'x 785, 787 (11th Cir. 2011).

Here, Mr. Streeter insists his guilty plea was involuntary because of prosecutorial misconduct, including various threats to sign the plea agreement. These include the threat that, if Mr. Streeter did not quickly sign the plea agreement, he would "be leaving with" "two officers displaying sidearms." (Civ. Doc. # 1 at 13). According to Mr. Streeter, the "threat was real as was the fear, if you don't sign you are not going home tonight, or any other night." (<u>Id.</u>).

Again, however, Mr. Streeter made numerous statements under oath at his change of plea hearing undercutting that his plea was involuntary. The Court fully explained the elements of the offense, the factual basis, and maximum penalties to Mr. Streeter, who agreed that he understood and had reviewed the plea agreement with counsel. (Crim. Doc. # 77 at 42, 45-53). Mr. Streeter agreed that his decision to plead guilty was "a decision that [he had] made only after having had a full and ample opportunity to discuss the matter with [his] lawyer, Mr. Rankin." (Id. at 41-42). Mr. Streeter agreed that he was "pleading guilty freely and voluntarily" and that he had not been "threatened, coerced, or otherwise forced . . . in any way" to plead guilty. (Id. at 41).

Mr. Streeter has not satisfied the heavy burden of showing that his statements made under oath during his plea colloquy were false. See Winthrop-Redin, 767 F.3d at 1217 ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). The Court "is entitled to discredit a defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements." Id. Thus, the Court does not credit Mr. Streeter's conclusory allegations that his

plea was involuntary, including that the prosecutor threatened him and he had insufficient time to review the plea agreement with counsel. Mr. Streeter's plea was knowing and voluntary.

Thus, in the alternative, all Mr. Streeter's grounds that assert his guilty plea was involuntary are denied.

## III. <u>Evidentiary Hearing</u>

As the Court readily determined that Mr. Streeter's Motion was procedurally barred, waived, and lacks merit, no evidentiary hearing is required. <u>See</u> 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); <u>see</u> <u>also</u> <u>Hernandez v. United States</u>, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## IV. <u>Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied</u>

The Court declines to issue a certificate of appealability because Mr. Streeter has failed to make a substantial showing of the denial of a constitutional right

32

as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Streeter to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Streeter shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Christopher John Streeter's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 111), including the supplement (Civ. Doc. # 19), is **DISMISSED** as procedurally barred as to all grounds for relief not based upon the ineffective assistance of counsel, is **DISMISSED** as waived as to all grounds not addressing the voluntariness of his plea and ineffective assistance of counsel regarding the plea, and **DENIED** as to all other grounds.

(2)    The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

33

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of March, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE